UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

S.A.F. (XXX-XX-6149)  CIVIL ACTION NO. 08-cv-1984

VERSUS

U.S. COMMISSIONER SOCIAL  MAGISTRATE JUDGE HORNSBY
SECURITY ADMINISTRATION

**MEMORANDUM RULING**

**Introduction**

Plaintiff was born in 1951 and has past work experience as a cashier. She applied for disability benefits. ALJ W. Thomas Bundy conducted a hearing and issued a written decision that analyzed the claim under the five-step sequential analysis. He found at step two that Plaintiff has the following severe impairments: degenerative joint disease of the knees, impingement syndrome of the right shoulder, depressive disorder, and adjustment disorder with anxiety. He eventually found that Plaintiff has the residual functional capacity ("RFC") to perform light work, reduced by moderate limitations in the ability to understand, remember, and carry out complex instructions, and in the ability to respond appropriately to usual work situations and to changes in a routine work setting. A vocational expert ("VE") identified Plaintiff's past work as a cashier as unskilled work that required no more than a light level of exertion as it is usually performed in the national economy. Based on that testimony, the ALJ found at step four that Plaintiff is not disabled. Tr. 19-28.

Four months after the ALJ's decision, Plaintiff filed a Functional Capacity Evaluation performed by Steve Allison, Doctor of Physical Therapy. Tr. 207. The Appeals Council discussed the assessment, discounted it, and denied the request for review. Tr. 5-7. Plaintiff filed this civil action seeking judicial review. Pursuant to 28 U.S.C. § 636(c) and the standing order of the district court governing social security cases, the action was referred to the undersigned for decision and entry of judgment. For the reasons that follow, the Commissioner's decision to deny benefits will be affirmed.

**Issue on Appeal**

Plaintiff lists a single issue. She argues that the finding by the Appeals Council that there is no reason to review the ALJ's decision is based on an error of law because the ALJ's decision is contrary to the weight of the evidence of record.

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Analysis**

Plaintiff testified at the hearing that her last job was as a cashier. VE Mary Walker testified that the job is classified as light, unskilled, with an SVP of 2. The ALJ asked Plaintiff what would keep her from returning to work. Plaintiff noted problems standing, walking, and with her shoulder. She reported "a problem with my right shoulder and my arm" that kept her from using her right hand very much. Plaintiff also complained she could not sit very long. Tr. 199.

The VE did not identify the cashier position by its number in the Dictionary of Occupational Titles ("DOT"), but cashier II 211.462-010, meets the criteria she described. The ALJ did not mention it in his decision, but written interrogatories were sent to a different VE after the hearing, and she listed the cashier II position as among those Plaintiff could perform. Tr. 113. The DOT describes the duties of a cashier II as including using an adding machine or cash register, and perhaps passing items over an electronic scanner to record the price. The person may also sell candy, cigarettes, and gum. Plaintiff points out that the DOT describes the job as frequently requiring reaching, handling, and fingering. Frequently means the need exists from one-third to two-thirds of the time.

Plaintiff does not directly attack the ALJ's finding, based on the record before the ALJ, that Plaintiff could perform the demands of cashier II. Rather, she focuses her attack on the Appeals Council's rejection of her contention that the Allison report suggests a reaching limitation that would preclude her from doing the work. An assessment of the

argument requires a review of all of the evidence relied on by the Commissioner with respect to Plaintiff's reaching ability.

Plaintiff reported in a May 2005 visit to LSU-HSC that she had neck, right shoulder, and low back pain that was improving slowly with Ibuprofen. Her right shoulder was tender with a decreased range of motion. Tr. 161-62. A visit in July 2005 noted that the shoulder was better. Tr. 158. At one visit in 2006, Plaintiff was prescribed a number of medications and directed to return in May 2006. Tr. 153. She returned in March 2006, when she complained of problems with her legs and shoulders hurting. She reported that the shoulder pains were caused by "heavy lifting" at work back in 2002. Plaintiff did not report experiencing chronic pain, but she was then experiencing pain in her right leg and shoulder that she described as dull, constant, and an intensity of 3 on a 1 to 10 scale. (Plaintiff described her pain at higher levels, such as 8, at later visits.) Plaintiff had a normal range of motion and strength in both of her arms, with no joint enlargement or tenderness. Tr. 151-52.

The agency asked for Plaintiff to be examined by Dr. Scott Bergeaux. Plaintiff, at the June 2006 exam, complained of a number of health problems, including fibromyalgia in her shoulders, upper back, and arms. The musculoskeletal examine was noted as positive for low back, knee, and shoulder pain. Plaintiff had 5/5 grip strength with adequate fine motor movements, dexterity, and ability to grasp objects with either hand. Dr. Bergeaux concluded that, despite the complaints, Plaintiff could sit for a full day but "may be limited" in her ability to walk or stand for a full work day due to intermittent chest pain. He found that she

could lift/carry objects of at least 20 pounds and had no postural or manipulative limitations. Tr. 122-24.

Plaintiff reported in an August 2006 visit to LSU-HSC that she continued to have pain in her right shoulder that was getting worse, especially if she tried to lift her hand over her head such as to comb her hair. On examination, the left arm was normal. The right arm had tenderness to palpation of the shoulder joint, and pain with active and passive abduction, but much less so than with flexion. Strength was 5/5. Tr. 143-47.

An X-ray of the right shoulder showed a small boney fragment, and the impression was impingement syndrome. Tr. 140-42. Plaintiff reported at a visit in September 2006 that her chief complaint was right arm pain. She said that, after starting new medicines, she feels much better at rest but still has pain with movement of the right shoulder. Tr. 138-39. Plaintiff complained in a November 2006 visit of constant, aching pain in her joints. Her condition with her right arm was about the same as described at the earlier examinations. Tr. 133-37.

Plaintiff reported during a consultative psychological exam that her daily activities include housework and taking care of her grandson. She said she is able to perform all personal care routines, shop, cook, and do household chores, although she needs assistance from her grandson with "heavy chores." She reported that she can drive but did so very little because of problems staying awake. Tr. 170. Plaintiff wrote in some of her application paperwork that her driving was limited by sleepiness and trouble with her arms, hands, and

shoulders. She wrote in the same report that she shops for groceries, cleaning supplies, and clothes when needed, usually once a week. Tr. 95. She wrote that she cleans some of her house but does not vacuum or sweep. She does do laundry, make the beds, wash dishes, and clean the bathroom, all of which takes most of the morning. She has to get someone else to do her floors for her. Tr. 94.

The ALJ discussed most of these records and testimony. He noted the "signs of right shoulder impingement" and found that the conditions could reasonably cause some pain, but the findings on exam had shown good strength in the extremities, adequate fine motor movements, dexterity, and ability to grasp objects with both hands. He noted that Plaintiff does not require strong narcotic medication for management of pain, and she primarily takes over-the-counter medication. Accordingly, he found that her conditions limited only her ability to lift and carry heavy objects. Tr. 26-27.

As noted above, Plaintiff does not directly challenge the ALJ's findings on this point. There is definitely evidence of a right shoulder impingement, but it appears there were credible evidentiary choices in the record for the ALJ to assess the impairment at a level that permitted the performance of light work. Plaintiff focuses her attention on the Allison report that she later submitted to the Appeals Council. That submission is found in a supplement to the administrative transcript. See Doc. 15. The report found Plaintiff generally capable of light work, subject to certain functional limitations. Allison wrote that Plaintiff was not capable of performing any overhead work with her right arm but could occasionally reach

overhead with her left arm. He found that Plaintiff could engage in constant reaching forward with her left arm but extended arm reaching with the right arm should be limited to an occasional basis. Tr. 211-213. Plaintiff argued to the Appeals Council that the Allison report shows she cannot perform the job of cashier, which requires frequent (1/3 to 2/3 of the workday) rather than occasional (up to 1/3 of the workday) reaching.

The Appeals Council wrote that it observed "some conflict" between the ALJ's assessment and the Allison report, but it did not find the report "to be significant enough to warrant further action." It explained:

> The newly submitted evidence assessed the claimant's functioning after the relevant time period under review and was procured by the claimant after the denial of benefits was rendered. There are parts of the new evidence that appear to suggest that the claimant's performance at the testing was unreliable. As a whole the record still provides substantial evidence to support the findings of the Administrative Law Judge and as such they will not be disturbed.

Tr. 5-6.

Plaintiff assumes that the Appeals Council's comment about indications of unreliability relate to Allison's statement that Plaintiff demonstrated objective evidence of safe-maximal performance in some tests but demonstrated evidence of sub-maximal performance during measures of hand grip and pinch strength testing, failing five of seven validity criteria on the hand strength assessment protocol. Allison also wrote that Plaintiff voluntary terminated the sustained walking tolerance test prior to reaching an objective termination point. Tr. 210.

Plaintiff argues that if this is the concern with reliability it should be overlooked because those tests do not concern her ability to reach. That may be, but the Council was nonetheless within the bounds of reasonableness when it discounted the Allison report based on indications of less than maximum effort. A judge or jury may discount the testimony of a witness who gives false testimony on several points, and they need not accept other testimony the witness gave that was not specifically proven wrong. Similarly, indications of malingering or less than good effort are to some factfinders like the thirteenth chime of a clock, casting doubt on other information from the same source.

This is not to say that Plaintiff did or did not give full effort in the testing, but there were objective indications that she did not, and the Council did not commit reversible error by taking that into consideration when it assessed the Allison report. Plaintiff also argues that sub-maximal performance can occur, according to Allison, for a variety of reasons including but not limited to malingering, illness, anxiety, or other reasons. Thus, Plaintiff argues, it does not necessarily follow that her sub-maximal performance proved malingering. As noted above, such a finding was not necessary to permit the Council to discount the weight of the report. No matter the reason behind it, sub-maximal performance would tend to lessen the abilities reflected in the final report and the overall reliability of the reported results. The Council was persuaded that the report was not sufficiently strong evidence to set aside the RFC found by the ALJ, and that was a credible evidentiary choice.

The Commissioner's final decision, the decision that is to be reviewed by the courts, includes the Appeals Council's denial of a request for review and requires the court to consider (in determining whether there is substantial evidence to support the decision) evidence that was submitted for the first time to the Appeals Council. Higginbotham v. Barnhart, 405 F.3d 332 (5th Cir. 2005). The undersigned has considered all of the evidence of record, including the Allison report, and finds that the Commissioner had credible evidentiary choices and, thus, substantial evidence to support the final decision. Accordingly, a judgment will be entered affirming the Commissioner's decision.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 26th day of July, 2010.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE